## HAWKINS v. KUHNE.

(Supreme Court, Appellate Division, Second Department.   November 1, 1912.)

1. ASSAULT AND BATTERY (§ 18*)—CIVIL LIABILITY—PERSONS LIABLE.

The order of an acting police captain to "take out the prisoners," meaning that those charged with felony be photographed and measured, rendered him liable for damages for the assault, that is, the wrongful photographing and measuring, since every person concerned in the commission of a tort, or who orders another to commit it, is a principal, and liable therefor.

[Ed. Note.—For other cases, see Assault and Battery, Cent. Dig. §§ 17, 18.; Dec. Dig. § 18.*]

2. FALSE IMPRISONMENT (§ 15*)—EXTRADITION—CABLEGRAM—ARREST WITHOUT WARRANT.

Where plaintiff, who was charged with embezzlement in a cablegram from Porto Rico which requested that he be held pending extradition, was released by a magistrate on the ground that the cablegram was insufficient to justify issuing a warrant, his rearrest by the defendant as acting captain of police rendered such officer liable for false imprisonment, although he did it under the direction of the district attorney.

[Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 5–67;  Dec. Dig. § 15.*]

Appeal from Trial Term, Kings County.

Action by Paul D. Hawkins against August Kuhne.  Judgment for plaintiff, and defendant appeals.  Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, WOODWARD, and RICH, JJ.

James D. Bell, of Brooklyn (Jesse W. Johnson, of Brooklyn, on the brief), for appellant.

William Henry Corbitt, of New York City (Arthur F. Gotthold, of New York City, and Ernest J. Ellenwood, of Brooklyn, on the brief), for respondent.

WOODWARD, J.  This action was brought to recover damages upon a complaint containing two counts, one for an assault and the other for false imprisonment.  The learned trial court held that the plaintiff was entitled to recover, and left it to the jury to determine the amount of the recovery, under appropriate instructions that the damages were to be compensatory only, including expenses, not exceeding a certain sum.  The jury returned a verdict for the plaintiff in the sum of $1,-788.09, and the defendant appeals from the judgment on the verdict and from the order denying his motion for a new trial.

[1] Such ruling is equivalent to a direction of verdict for the plaintiff for a fair compensation, to be determined by the jury, and may be objectionable in any case on at least one of two grounds:  First, that the evidence presents a disputed question of fact for the determination

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the jury; or, second, if there is no such question, still as matter of law the plaintiff would not be entitled to recover.

The plaintiff had been in the employ of a light and power company in Porto Rico some two years prior to April, 1908. He was, during the latter months of that time, general manager for the company at a salary of $125 a month, payable one half at the middle and the other half at the end of the month. Payments thereof had been made from time to time by checks on the company, drawn by the plaintiff as such manager, and with the assent of its president and vice president. On the 21st or 22d of that month, the plaintiff drew and cashed such check for the sum of $62.50, salary for the last half of the month, and went by train to San Juan, 60 miles distant, from which place he wrote the company that he had left their employ, and sailed for New York on the same or the following day. His employment with the company was to begin on his leaving the United States and continue until his return thereto.

The Governor of Porto Rico cabled the district attorney of New York, requesting the arrest and detention of the plaintiff pending the arrival of rendition papers upon a charge of embezzlement. The cablegram came to the hands of the defendant, a member of the New York police force, and he caused the plaintiff to be arrested on his arrival here during the night of April 27, 1908, and locked up in a police station until the next morning. There is no complaint, however, because of this arrest or detention. On the following morning, April 28th, the plaintiff was taken before the defendant, then acting police captain, at police headquarters, as were also other persons under arrest for other causes. The defendant, having questioned such prisoners concerning the charges against them, including the plaintiff (who declined to make any explanation of the alleged embezzlement), ordered the police officers in charge of the prisoners to "take them out," meaning thereby that those accused of minor offenses should be taken before a magistrate, and that those accused of felonies should be photographed and measured, as was the custom and rule of the police department. The plaintiff was accordingly taken into another room, apart from the defendant, where he was photographed and measured, and prints of his thumbs and fingers were taken for use and preservation in the "Rogues' Gallery," pursuant to that rule or custom, and against the plaintiff's protest and claim, without avail, that he should be taken before a court and allowed to communicate with counsel.

This order of the defendant, together with the taking of such photograph, measurements, and imprints, constitute the first cause of action; and there is no dispute whatever as to the facts out of which the cause arises. The defendant himself testified that he was the superior officer in charge on that occasion. And when asked what he meant when he said, "Take them [the prisoners] out," he answered:

"Those charged with misdemeanor to be taken to court, and those charged with felony to be taken upstairs to be measured according to rule."

Again:

"After the inspection was completed, I told the detectives in charge of these prisoners to take them out. By that I meant that those who had been

accused of minor offenses, misdemeanors, were to be taken before the magistrate, and those who had been accused of felony or offenses graver than that of misdemeanor were to be taken out and photographed and measured. That is what my order meant."

It is also in evidence and uncontradicted that the defendant subsequently said:

"I am the man who is responsible. I took them" (the photographs and measurements), "and I am going to give them now to you" (the witness).

The testimony, therefore, presents no disputed question of fact for the determination of a jury in respect to the first cause of action. Counsel for appellant say in their brief:

"We do not question that the taking of the plaintiff's picture before conviction was an illegal act. * * * We do not question that an assault was committed on the plaintiff."

This is in accord with a thorough examination and discussion of the law in the recent case of People ex rel. Gow v. Bingham, 57 Misc. Rep. 66, 107 N. Y. Supp. 1011. But counsel say that the defendant did not commit the assault, or, at least, the question of whether he did or not was for the jury, not for the court, to determine. This position is untenable. There is not a word of dispute as to the part the defendant took or acted in the premises, nor even as to his intent in doing what he did do. He ordered that the plaintiff be "taken out," meaning thereby, and knowing in fact, that the conceded assault should and would be committed, or, which is the same thing, that the photograph and measurements should be taken. "That," he says, "is what my order meant. * * * I am the man who is responsible." Not only so; it is apparent that the person or persons to whom the order was given understood and executed it as the defendant intended they should.

With the fact of the assault itself, and the acts and intent of the defendant himself, in relation thereto, all admitted, nothing was left for determination but a pure question of law for the court—the defendant's legal relation to or liability for that wrong. An assault is a tort, and it is a fundamental principle of law that every person concerned in the commission of a tort, or who, whether present or absent, directly or indirectly counsels, induces, procures, commands, or orders another to commit it, is a principal and liable therefor.

In Green v. Kennedy, 46 Barb. 16, the plaintiff was arrested by a police officer without a warrant and taken before Superintendent Kennedy, the defendant, who ordered that the plaintiff be locked up, which was done, and he sued for the assault and false imprisonment. The defendant moved on the trial to dismiss the complaint, so far as the alleged assault and battery were concerned, on the ground that the evidence failed to show that he authorized, ratified, or was cognizant of or in any way connected with it. The motion was denied. The court, affirming a judgment for the plaintiff, said in part:

"The defendant, by directing the imprisonment of the plaintiff, was guilty of it. When he told the officer who made the arrest to take the plaintiff back and lock him up, in contemplation of law he did the act which the officer did who followed the direction. He is not permitted to show that the

act was not the consequence of the request, which the law adjudges to be part and parcel of the act itself. He cannot direct a trespass, and after its commission escape upon the ground that the officer violated his duty in obeying the direction. The action is made out, and no justification is pretended for the trespass committed by the defendant's direction."

The Court of Appeals (48 N. Y. 653), affirming that judgment, said that it was the duty of the officer making the arrest to convey the prisoner immediately before the nearest magistrate; and when the defendant, whether with or without authority, gave directions in the matter, it was his duty to have directed a compliance with, not a violation of, the statute.

The decision of that case is sufficient authority, if any were necessary, to show that the defendant here is as much at fault for the wrong done in pursuance of his order as if he himself had committed the wrong. This cause of action was properly disposed of on the trial.

[2] And so as to the cause for false imprisonment. After the plaintiff had been so photographed and measured, he was taken before a magistrate, where application was made, by the police officer in charge of him, for a warrant for his further detention, based on the cablegram already mentioned. But the magistrate, declining to entertain a complaint against the plaintiff as a fugitive from justice on that source of information, said he would hold him in the same amount of bail, $500, on an affidavit charging him with vagrancy. This charge was made by a police officer, and the plaintiff, on being released on bail in that sum, returned to police headquarters to get his baggage, detained there since his arrest on the previous night. The defendant was absent, and the officer in charge refused to surrender the baggage until his return. The plaintiff waited there until the defendant returned, three or four hours later. The defendant's testimony as to what then occurred is to the effect that he called up the district attorney and told him of the magistrate's refusal to hold the plaintiff for the alleged embezzlement, that he did not think the magistrate knew the facts of the case, and that the district attorney told defendant to rearrest the plaintiff. Whereupon the defendant caused him to be rearrested and taken back to jail, against his protest. On the following morning, April 29th, the plaintiff was arraigned before a magistrate, charged with being a fugitive from justice, and again released on bail, and finally discharged on May 6, 1908, on information of the dismissal of the proceedings against him in Porto Rico.

This arrest and detention constitutes the second cause of action. The only claim of justification therefor is the cablegram from Porto Rico and the direction of the district attorney. These formed no justification or excuse for the defendant's order that plaintiff be rearrested and taken back to jail. The cablegram had, as the defendant was aware, already been presented to and refused by a magistrate, the proper authority, as the foundation for a warrant of arrest. The Code of Criminal Procedure (section 177) prescribes that:

"A peace officer may, without a warrant, arrest a person: 1. For a crime, committed or attempted in his presence; 2. When the person arrested has.

committed a felony, although not in his presence; 3. When a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it."

The Court of Appeals has very recently held that:

"Even in the case of a felony, to justify an arrest without a warrant, it is necessary to establish that a felony has in fact been committed." Stearns v. Titus, 193 N. Y. 272, 275, 85 N. E. 1077, 1078.

There is no proof of that fact in this case, or any evidence to justify a jury in finding that a felony had been committed.

No substantial error was committed in the reception or rejection of evidence, or in the charge to the jury.

The judgment should be affirmed, with costs.    All concur.