Samuel H. Hofstadter, J.
The petitioner passed the examination for the position of patrolman in the Police Department. After appropriate investigation, he was certified by the Department of Personnel to the Police Department as eligible. The Police Commissioner, however, on three occasions on the same day considered the petitioner for appointment from among the three highest names on the eligible list and on each occasion passed over the petitioner in favor of another candidate. In this proceeding under article 78 of the Civil Practice Act, the petitioner complains of such refusal to appoint him as arbitrary.
He is now 28 years old. In 1945, when he was 13, he was adjudicated a delinquent in the Children’s Court of the Domestic Relations Court of the City of New York. The nature of the delinquency does not appear. The petitioner complains that the sole ground for his rejection was such adjudication.
When submitted to an investigation by a police sergeant by direction of the commanding officer of the Police Academy, he was advised that, because of the delinquency adjudication, the respondent Police Commissioner would not consider him for appointment. After he had been notified of the refusal to appoint him, he requested a hearing on his eligibility. Despite a long-standing practice of the Commissioner to grant informal hearings, upon request, in similar situations, his request for *55 the usual hearing was denied. The reason given at Police Headquarters was the petitioner’s adjudication as a delinquent when he was 13. None of the foregoing is denied.
Standing on his right, as head of his department, to select one of the three highest on the list (see Matter of Delicati v. Schechter, 3 A D 2d 19), the Commissioner has not revealed the basis for the rejection of the petitioner. Undoubtedly, he has a very broad discretion in making appointments to the department, and when exercised within its proper sphere the court may not impinge on it. Yet, broad as the discretion is, it is not unlimited; for, unlimited discretion is the equivalent of unbridled power, which is contrary to the spirit of our democracy. Arbitrary power, however well-intentioned, is an anomaly in a free society. Accordingly, the applicable rule is that the Police Commissioner may not arbitrarily refuse to appoint an eligible candidate (Matter of Hamilton v. Monaghan, 285 App. Div. 692, affd. 1 N Y 2d 877; Matter of Maynard v. Monaghan, 284 App. Div. 280, 283; Matter of Embarrato v. Adams, 2 A D 2d 877, motion for leave to appeal denied 3 A D 2d 701; see, also, Matter of Hamilton v. Brennan, 203 Misc. 536; Matter of Anonymous v. New York City Tr. Auth., 4 A D 2d 953, affd. 7 N Y 2d 769).
Section 84 of the Domestic Relations Court Act provides:
“ § 84. Adjudication not to serve as a disqualification.
“ No adjudication under the provisions of this act shall operate as a disqualification of any child subsequently to hold public office or as a forfeiture of any right or privilege or to receive any license granted by public authority; and no child shall be denominated a criminal by reason of such adjudication, nor shall such adjudication be denominated a conviction. Neither the fact that a child has been before the children’s court for hearing nor any confession, admission or statement made by him to the court or to any officer thereof while he is under the age of sixteen years shall ever be admissible as evidence against him or his interest in any other court.”
It is not held here that an adjudication of juvenile delinquency may never be taken into account in weighing the suitability for appointment of an individual. But we apply the term, ‘ ‘ juvenile delinquency” to a wide range of misdeeds. Our laws provide that a child may be declared delinquent not only for violation of State laws and municipal ordinances, but also for such general forms of misconduct as habitual disobedience, waywardness and incorrigibility — conduct that would not be criminal in an adult. Discrimination must be made between misbehavior which is isolated and arises out of the highspirited nature of youth and *56 its inherent instability and misconduct which is continuous and basic. This is especially important when the misdeed in question was committed by a child of tender years — in this instance 13. For all too often our children reflect the violence of out age. The corruption of the elders has spawned the delinquency of the young. Youthful misconduct is but a symptom of the wider and deeper malaise of our society. Indeed, young people —bewildered, perplexed, bedevilled — are to be commended in that only a small number of them — estimated as low as 3% — succumb to the deleterious influences that surround them. And even these youngsters are for the most part, not vicious, but rather vulnerable. Certainly the faltering of youth should not of itself irretrievably stigmatize the offender for all time. Themistocles reminds us that the wildest colts often make the best horses.
If the petitioner has been denied appointment, not because his adjudication in fact tends to discredit him, but in pursuit of a settled policy to reject all candidates who have been adjudicated juvenile delinquents, regardless of every other factor, then the Police Commissioner will have undertaken to establish the very disqualification prohibited by the quoted statute. Self-evidently, such nullification of the law and flouting of the policy which it embodies, must be condemned as arbitrary and therefore unlawful.
What is more, it is inadmissible and contrary to wholesome public policy. The underlying purpose of our laws relating to delinquency is protective not punitive. The act establishing special statutory courts with jurisdiction over juveniles expressly provides that such young people are not to be treated as criminals but as children in need of ‘ ‘ aid, encouragement and guidance.” (N. Y. City Dom. Rel. Ct. Act, § 89.) The police in this city have long recognized these general principles and have contributed to their effectuation by the praiseworthy efforts of their Juvenile Aid Bureau and the Police Athletic League. And the Court of Appeals, writing of proceedings in Children’s Court, has flatly stated that “All suggestion and taint of criminality was intended to be and has been done away with ” (People v. Lewis, 260 N. Y. 171, 176).
To permit an adjudication of delinquency to operate as an automatic disqualification in later life would vitiate the entire philosophy behind special courts for children. If it is, in fact, one of our purposes to rehabilitate children in trouble — to offer them the ‘6 aid, encouragement and guidance ’ ’ envisioned by the statute — we must take the responsibility for their reintegration into the community as useful citizens. It would be futile — and *57 even cruel and inhuman — for the law, on one hand, to encourage the wrongdoer to mend his ways, and, on the other, to reject the reformed transgressor. Indeed, “ joy shall be in heaven over one sinner that repenteth, more than over ninety and nine just persons, which need no repentance.” (Luke, xv, 7.) If the petitioner is indeed the “ lost sheep which has been found ”, the community — and the Police Department — should welcome him back into society.
The matter is therefore remanded to the Police Commissioner for further proceedings not inconsistent with this opinion.