Nanette Dembitz, J.
The instant motion for the sealing of a juvenile arrest record, invokes a recent amendment of the Criminal Procedure Law as a fresh basis for an order to the police to seal the record of a juvenile’s arrest. Under the law as it stood prior to the CPL amendment, the Court of Appeals had rejected a variety of arguments offered in support of efforts to secure such orders. (Matter of Richard S. v City of New York, 32 NY2d 592; Matter of Antonio P., 40 NY2d 960.)[1] The court nevertheless recognized the social and economic *701 dilemmas that had given rise to the numerous cases seeking to expunge or seal juvenile arrest records, concluding that an arrest record may "result in unwarranted discrimination in the child’s future”. (Matter of Richard S., supra, p 595.)
The recent amendment to the Criminal Procedure Law provides for a court order to the police to seal an arrest record when a criminal action terminates in favor of the accused in a specified manner. (CPL 160.50, eff Sept. 1, 1976.) The record thereafter will be available only to the accused and to various officials, under specified circumstances.
The CPL amendment reads in the terms of adult criminal proceedings and omits any mention of Family Court juvenile delinquency proceedings, in which charges of crime against minors under 16 are adjudicated. The question at bar is whether the principle of fair and equal treatment of juvenile with adult offenders, established by a body of appellate rulings in this State and in the United States Supreme Court, requires the extension to juveniles of the new rule as to the sealing of an arrest record. For the reasons detailed below, this court holds that juveniles must be given the benefit of the CPL amendment.
A. APPLICATION OF CPL TO JUVENILES
While the United States Supreme Court recognizes that a juvenile delinquency proceeding is essentially criminal, it has left for case-by-case determination the issue of whether the various constitutional protections accorded adult defendants also cover juveniles (Matter of Gault, 387 US 1; Matter of Winship, 397 US 358; McKeiver v Pennsylvania, 403 US 528, 550). In similar vein, the New York Court of Appeals has held that the CPL does not automatically govern in its entirety in juvenile delinquency proceedings (Matter of D. [Daniel], 27 NY2d 90, 95), and applicability has been decided on a case-by-case, provision-by-provision basis.
The learning to be derived from this body of law is that the constitutional guarantee of " 'due process and fair treatment’ ” requires that courts accord the juvenile in a delinquency proceeding the protections accorded in adult criminal proceedings unless the particular procedural step "would risk destruction of beneficial aspects of the juvenile process.” (Matter of Winship, supra, pp 359, 366.) Thus, one CPL provision after another has been held applicable, as a matter of constitutional necessity, to a juvenile, because "to hold
*702 otherwise would deny to him his right of equal protection of the laws” and violate "the requirements of due process and fair treatment”. (Matter of Steven B., 30 AD2d 442, 444.) A failure to accord the protection of a CPL provision "based solely upon age, without other justification, denies both due process and equal protection of the law.” (Matter of Eric R., 34 AD2d 402, 403.)[2] See, also, People ex rel. Guggenheim v Mucci (32 NY2d 307, 313), where the court in effect imported the CPL rules on preliminary hearings into juvenile proceedings, saying: "It would take a distorted view to believe that adult felony criminal proceedings were designed to be more tender of the rights of detained adults than the Family Court proceedings are of juveniles.”
The net result of the cases considering whether juveniles should enjoy the various constitutional or statutory protections accorded to adult criminal defendants, is that all have been held applicable to juveniles except for the right to jury trial — which was deemed disadvantageous to juveniles[3] — and except for the minor, formal requirement of notice of intention to introduce an admission. (Matter of D. [Daniel], 27 NY2d 90, 95, supra.)
B. APPLICATION TO JUVENILES OF NEW CPL PROVISION ON SEALING ARREST RECORDS
1. PURPOSE AND POLICY OF CPL PROVISION
Under the principle established by the above cases that a protection conferred on adult defendants must be extended to juveniles unless inappropriate for them, it seems clear that the new provision on arrest records must be applied to juveniles. Certainly juveniles cannot be denied its benefit on the ground approved in Winship for an exception to the general principle of equality of treatment of juveniles and adults (that is application "would risk destruction of beneficial aspects of the juvenile process” [Matter of Winship, 397 US 358, 366, supra]). And, for validity, a discrimination denying a benefit to a juvenile "must, at the very least 'have some relevance to the *703 purpose for which the classification is made.’ ” (Matter of Patricia A., 31 NY2d 83, 88.) This principle dictates the application of the arrest-record provision to juveniles. For, there is no rational ground for distinction between adults and juveniles from the standpoint of the purpose and policy of the legislation.
The purpose of the CPL amendment, as stated in the Governor’s message approving it, was "to protect the rights of individuals” and to effectuate "the presumption of innocence.” (McKinney’s Session Laws of 1976, p 2451.) That presumption is just as basic for juveniles as adults (see Winship, supra, p 363). But, as the Court of Appeals recognized in Matter of Richard S. v City of New York (32 NY2d 592, supra), in the economic world the juvenile must prepare to enter there tends to be a presumption of guilt from an arrest record rather than the presumption of innocence that in the world of legal theory prevails until conviction. The police record of a juvenile’s arrest, even though he was never found guilty, thus is a handicap to him when he seeks public or private employment or entrance into the armed forces or a scholarship or a professional license (see Matter of Richard S., supra, p 595).[4]
Certainly the injustice to which the CPL amendment is directed, and the "unwarranted discrimination in the child’s future” (Matter of Richard S., supra, p 595) (ibid) is as serious for a youth as an adult. Further, many arrested juveniles are children of the poor and the minorities; it is particularly onerous, and contrary to the public interest, for them to bear the additional handicap of an arrest record when they attempt to gain a foothold on the economic ladder and climb out of the poverty ghetto.
Juvenile delinquency proceedings in place of criminal court proceedings for youths under 16 were designed to ameliorate the harsh consequences of the latter, and especially to lessen the stigma of arrest (Family Ct Act, § 784). It would be an irrational anomaly if juveniles under 16 are denied the benefit of the protection of the CPL amendment on arrest records while it is available to those tried in adult criminal proceedings or in the youthful offender part established in the criminal court for youths 16 to 19.
*704 2. COMPARISON WITH PROVISIONS PREVIOUSLY HELD APPLICABLE
While the CPL provisions previously held applicable to juveniles have involved the admissibility of evidence and trial procedure, a distinction between them and the instant provision seems unjustified from the standpoint of the principle of fair and equal treatment of juveniles with adults. The CPL amendment at bar provides for the issuance of the sealing order as the final phase of the trial proceeding itself, rather than in a separate proceeding. Thus, the status of the instant provision is similar to that of the provision on preliminary hearings, involved in People ex rel. Guggenheim v Mucci (32 NY2d 307, 313, supra).[5]
Further, the principle that juveniles are entitled to the same protection as adults encompasses more than evidentiary matters. In Breed v Jones (421 US 519, 530-531, supra), the Supreme Court held that the constitutional guarantee against double jeopardy applies to a juvenile as it does to an adult for the "heavy pressures and burdens — psychological, physical and financial * * * on a person charged” as well as the "anxiety and insecurity” which the accused experiences, are the same for a juvenile as an adult. The appellate courts expound a broad rather than a narrow application of the principle of fair treatment of juveniles: there is a need for "fundamental fairness in the juvenile-court system” (Breed, supra, p 531); it must be animated by "sympathy and concern for the young” (McKeiver, 403 US 528, 555, supra [also, see, p 550]); "irreparable harm [is] * * * the antithesis” of its purpose (Matter of Richard S. v City of New York, 32 NY2d 592, 595, supra).
3. IMPUTATION OF TERMS INTO CPL
That the CPL provision reads in terms of adult proceedings, —referring throughout to "criminal action”, "accusatory instrument” and the "accused”, — is no obstacle to application of the provision in juvenile delinquency proceedings, which employ different terminology for the same concepts. Counterpart language in terms of juvenile delinquency proceedings has in effect been written into all the CPL provisions held applicable *705 to juveniles.[6] And it is approved practice to correct a due process or equal protection fault by an expansive construction of a statute rather than by invalidating it, so long as the expansion is consistent with the policy of the statute. (See Matter of Carole K. v Arnold K., 87 Misc 2d 547, 551, and cases there cited.)
In sum, it is clear that a discrimination against the juvenile respondent by denying him the benefit available to adults under the CPL amendment would violate established principle as to the extension of constitutional and CPL protections to juveniles and would contravene the constitutional guarantees of due process and equal protections.
C. FUNCTIONS OF FAMILY COURT TO ISSUE ORDER
While stating in Matter of Richard S. v City of New York (32 NY2d 592), that the problem of power and procedure to seal a juvenile arrest record required a legislative solution, the Court of Appeals clearly indicated that the Family Court would be the appropriate court to exercise the power if it existed. The court said (p 595), in regard to juvenile arrest records: "Such discretion as there may exist rests solely in the Family Court (Family Ct. Act, § 166)”.
In addition to the section of the Family Court Act cited by the Court of Appeals, section 784 is also pertinent. That section directs that police arrest records of a juvenile should not be open to public inspection but authorizes a Family Court Judge to permit their inspection; and this section has been given a broad construction (see Matter of Smith, 63 Misc 2d 198, 204, n 14, supra). Further, section 141 of the Family Court Act expresses the legislative purpose of giving the Family Court "a wide range of powers for dealing with * * * the particular needs of those before it.” (See, also, Morrow v District of Columbia, 417 F2d 728, 739, 740, as to a court’s ancillary authority to implement its decisions.)
In any event, from a constitutional standpoint this court must be deemed to possess the power to conduct the final phase of a delinquency proceeding in accordance with the CPL amendment and issue a sealing order. If the power were deemed to reside in a court other than the Family Court, such a result would in itself impose a discriminatory burden on a *706 juvenile by forcing him to apply to another court for this benefit. It is a significant benefit of the CPL amendment that the court in which an action terminates favorably to the accused, has the duty at its own instance without any application from the defendant to issue the order. CPL 160.50 (subd 1) reads: "Upon the termination of a criminal action or proceeding against a person in favor of such person, as defined in subdivision 2 of this section * * *the court wherein such criminal action or proceeding was terminated shall enter an order, which shall immediately be served by the clerk of the court * * * upon the heads of all police departments and other law enforcement agencies” with the direction for sealing of records. (The order is not issued if "the district attorney upon motion * * * demonstrates to the satisfaction of the court that the interests of justice require otherwise” [CPL 160.50, subd 1].)
D. SEALING ORDER IN CASE AT BAR
In the instant case it is clear that the proceeding has terminated in the juvenile’s favor within the meaning of the CPL 160.50 (subd 2, par [b]) (see CPL 170.30, subd 1, par [e]; and Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 170:30). In conformity with the procedure prescribed by the CPL, the Corporation Counsel (who performs the role of the District Attorney in juvenile delinquency cases) is given 20 days from service upon him of this opinion to move that an order to seal respondent’s arrest record should not be granted. If he fails to so move, settle order on notice.

. See, also Matter of Donald J. (37 AD2d 717) and Matter of Charles S. (58 AD2d 584).

. And, see, Matter of Arthur M. (34 AD2d 761); Matter of Louis H. (36 AD2d 912); Matter of William L. (41 AD2d 674); Matter of Steven D. G. (43 AD2d 585); and Matter of Julius S. (44 AD2d 826).

. See McKeiver v Pennsylvania (403 US 528, supra). As to constitutional and statutory provisions held applicable, see cases cited in preceding paragraphs and Breed v Jones (421 US 519 [prohibition against double jeopardy held applicable in juvenile cases]).

. See Schware v Board of Bar Examiners (353 US 232, 241), as to use of arrest record on admission to the Bar. As to the burden to a juvenile of the stigma of delinquency, see Breed (421 US 519, 529, supra); Winship (397 US 358, 374 [Harlan, J., concurring]); and Matter of Smith (63 Misc 2d 198, 201).

. And it is to be noted that the CPL provisions on search and seizure and stop-and-frisk, both held applicable in juvenile delinquency trials, affect police action preliminary to trial proceedings — albeit that they are enforced through the exclusion of evidence.

. See Matter of Steven B. (30 AD2d 442, supra), and other Appellate Division decisions cited therewith above.