Hugh R. Elwyn, J.
The respondent, a boy of 15 at the time of the commission of the alleged offense, is charged with being a juvenile delinquent in that on January 22, 1968 he in the company of another minor named James Wing did take, steal and drive away a certain 1967 Plymouth automobile — acts which if done by an adult would constitute the crime of unauthorized use of a vehicle in violation of section 165.05 of the Penal Law.
The only testimony adduced on behalf of the petitioner to prove the charge was that of the respondent’s codefendant, James Wing who recounted how on the evening of January 22, 1968 he and the respondent upon observing a car parked in a driveway and noticing that the keys were in it, got into the car and each took turns driving it about the City of Kingston until it was later abandoned. The witness testified that he did not know who owned the car and that neither he nor the *156 respondent had permission from the owner to use the car. The respondent did not testify.
The respondent moves to dismiss the petition upon the grounds: (1) that the proof did not negate the possibility that the car did not belong to the witness or that he did not have permission from the owner of the vehicle to use it, and (2) the testimony of the respondent’s accomplice, not being corroborated by any other evidence as tends to connect the respondent with the commission of the crime, he cannot be convicted. (Code crim. Pro., § 399.)
The first'ground urged for dismissal of the petition is without merit. The witness Wing testified that he did not know who the owner of the car was and that neither he nor the respondent obtained permission from the owner of the vehicle to use it. The holding of Matter of Diane S. (18 N Y 2d 973), that section 1293-a of the old Penal Law is to be strictly construed and that J the statute does not apply to one who accepts a ride in an automobile, even knowing it to have been taken without the owner’s consent, unless he was implicated or involved in the actual taking of the vehicle ” has been changed by the enactment of the new Penal Law (L. 1965, ch. 1030).
Section 165.05 of the new Penal Law states that, “ a person is guilty of unauthorized use of a vehicle when: 1. Knowing that he does not have the consent of the owner, he takes, operates, exercises control over, rides in or otherwise uses a vehicle. A person who engages in any such conduct without the consent of the owner is presumed to know he does not have such consent.” Independent proof that the respondent knew that he did not have the consent of the owner to use the vehicle is not required (People v. Crawford, 56 Misc 2d 348, 349).
The second ground for the motion to dismiss squarely raises the question of the applicability of the Code of Criminal Procedure to proceedings in the Family Court for an adjudication of juvenile delinquency.
There can be no doubt that the framers of the legislation establishing the Family Court intended that the court should be a civil rather than a criminal court. The Report of the Joint Legislative Committee on Court Reorganization (Report No. 2, Jan. 30, 1962, p. 2; McKinney’s Sess. Laws of New York, 1962, vol. 2, p. 3430) under the paragraph heading, “ Question of criminal jurisdiction ” reports that “ The new constitutional amendment authorizes the Legislature to give to the Family Court extensive criminal jurisdiction. It does this by allowing the Legislature to confer on the Family Court jurisdiction over 6 crimes and offenses by or against minors "Whether, or to *157 what extent, criminal jurisdiction should be given to the new court is a problem of great concern to the Committee.
“ The Committee concluded that it would be unwise, at this time, to give the Family Court the extensive powers given the criminal courts under the Penal Law of the State of New York. This would also introduce the technical requirements of the Code of Criminal Procedure. In the Committee’s view, while a due process of law should be used in the Family Court, criminal powers and procedures would be inconsistent with the proper development of the Family Court, during its formative period, as a special agency for the care and protection of the young and the preservation of the family.
“Accordingly, the proposed Family Court Act does not at this time include provisions for the conduct of any criminal trial in the new court. ’ ’
Under the heading of juvenile delinquency the report continues (p. 6): “ Early in the history of the juvenile court movement there was agreement that juvenile delinquency proceedings should be ‘ civil ’, not [1] criminal ’. This agreement was based on a sense of a child’s exuberance and vitality and the stress of the early years of life. The restraints and disciplines of adulthood have not yet been established. The possibilities of change are seemingly great. And so the decision was made to avoid a criminal conviction for the young and to shape the law and provide a court to guide and supervise, rather than punish, children in trouble.
“ The Committee adheres to that decision.” (Report No. 2 of Joint Legislative Committee on Court Reorganization, 1962, p. 6; McKinney’s Sess. Laws of New York 1962, vol. 2, pp. 3433-3434.)
In creating the Family Court the Legislature implemented this decision by declaring that no adjudication of juvenile delinquency may be denominated a conviction and that no person adjudicated a juvenile delinquent shall be denominated a criminal (Family Ct. Act, § 781); that no adjudication shall operate as a forfeiture of any right or privilege or disqualify any person from subsequently holding public office or receiving any license (§ 782); and the confidentiality of the proceedings is insured by providing that the record of the proceeding shall not be admissible in evidence against him in any other court (§ 783) and that police records relating to the arrest and disposition of a juvenile shall be withheld from public inspection (§ 784).
The reported decisions of the Family Court which have considered the problem are consistent with this philosophy and concept of the juvenile court in that they have held the Code of *158 Criminal Procedure to be inapplicable to juvenile delinquency proceedings in the Family Court. In Matter of “Jones ” (43 Misc 2d 390) Judge Richards W. Hannah held that section 399 of the Code of Criminal Procedure which prohibits the conviction of a defendant upon the testimony of an accomplice unless corroborated by other evidence as tends to connect the defendant with the commission of the crime was inapplicable to the Family Court and that the common-law rule as to an accomplice must be applied. In Matter of “ John Doe ” (44 Misc 2d 678, 683), Judge Hannah held that section 392 of the Code of Criminal Procedure which prohibits the conviction of anyone upon the unsworn testimony of a child under the age of 12 years unsupported by other evidence inapplicable to the Family Court. He “ concluded that a finding can be made upon the unsworn testimony of a child of tender years without further corroboration ”. (See, also, Matter of Rooney, 48 Misc 2d 890, 894.) For essentially the same reasons, i.e. inapplicability of the Code of Criminal Procedure to proceedings in the Family Court, I held in Matter of Williams (49 Misc 2d 154, 159) that “ the failure of the petitioner to give the respondent advance notice of an intention to offer the respondent’s confession in evidence [as required by section 813-f of the Code of Criminal Procedure] does not # # * render the confession inadmissible in a fact-finding hearing in the Family Court.”
In the light of the evident disinclination of the framers of the legislation creating the Family Court to introduce into its procedures the technical requirements of the Code of Criminal Procedure, the omission of the Family Court from the list of courts to which the Legislature has declared the Code of Criminal Procedure to be applicable (Code Crim. Pro., § 11), the express statutory declaration that juvenile delinquency is not a criminal conviction (Family Ct. Act, § 781) and the long-established and generally accepted philosophy of the juvenile court as a court where the juvenile was to be rehabilitated and reformed, rather than punished, these decisions are both logical and justifiable.[1]
However, since those cases were decided, juvenile courts have been pointedly reminded of their failure to achieve the exalted ideals envisaged by their planners and indeed, the validity of the rationale underlying the origin and concept of the juvenile *159 court system in this country has been seriously questioned and characterized as debatable by the highest judicial authority (Matter of Gault, 387 U. S. 1, 11-28; see, also, concurring opn. of Justice Black and dissenting opn. of Justice Stewart). Informality and procedural short cuts are no longer acceptable practices in the juvenile court. “ Our Constitution * * * require [s] the procedural regularity and the exercise of care implied in the phrase ‘ due process ’. Under our Constitution, the condition of being a boy does not justify a kangaroo court.” (Matter of Gault, supra, pp. 27-28.)
Whatever circumvention of constitutional rights and due process could be rationalized from the “civil” label applied to juvenile delinquency proceedings has been completely swept away by Supreme Court’s decision in Gault. “It would be entirely unrealistic ” says the court, “ to carve out of the Fifth Amendment all statements by juveniles on the ground that these cannot lead to ‘ criminal ’ involvement. In the first place, juvenile proceedings to determine ‘ delinquency, ’ which may lead to commitment to a state institution, must be regarded as ‘ criminal ’ for purposes of the privilege against self-incrimination. To hold otherwise would be to disregard substance because of the feeble enticement of the ‘ civil ’ label-of-convenience which has attached to juvenile proceedings.” (Matter of Gault, supra, pp. 49-50.)
There is no use in glossing over or minimizing the far-reaching effects of the Gault decision on juvenile delinquency proceedings. (See Matter of Urbasek, 38 Ill. 2d 535; United States v. Costanzo, 395 F. 2d 441 requiring proof of acts of delinquency beyond a reasonable doubt.) The concept of these proceedings as “ civil ’’ with the attendant immunization from constitutional safeguards and the criminal law is dead. Justice Stewart recognized this when in the course of his dissent he said (p. 79): “ But I am certain that the answer [to the serious problems of juvenile delinquency] does not lie in the Court’s opinion in this case, which serves to convert a juvenile proceeding into a criminal prosecution.”
Although it remained for the Supreme Court in Gault to deal the death blow to the concept of juvenile delinquency proceedings as “ civil ”, the concept had already suffered a mortal wound at the hands of the New York Court of Appeals in Matter of Gregory W. (19 N Y 2d 55, [Dec., 1966]) cited by the Supreme Court in its opinion in Gault. The Court of Appeals in an opinion by Keating, J. said (p. 62): ‘ ‘ While the Family Court Act specifically states that the proceedings held thereunder are not criminal in nature, the various provisions made for the protection of children who are charged with juvenile delinquency *160 are indicative of a legislative recognition of the fact that such proceedings, resulting as they do in a loss of personal freedom, are at the very least quasi-criminal in nature” (emphasis supplied).
The metamorphosis of the concept of juvenile delinquency proceedings in the Family Court from ‘1 civil ” to “ criminal ’ ’ or “ at the very least, quasi-criminal ’ ’ has continued apace and can be traced through such decisions as Matter of William L. (29 A D 2d 182 [Jan., 1968]) holding that there is no valid ground for denying a child the benefits of the warnings required by Miranda v. Arizona (384 U. S. 436) simply because he is a child; Matter of Richard W. (29 A D 2d 873 [March, 1968]) holding that admissions made without representation of counsel violated his constitutional rights; and Matter of Aaron D. (30 A D 2d 183,184 [June, 1968]) which after quoting the dictum of the Court of Appeals in Gregory W. that juvenile delinquency proceedings “ are at the very least quasi-criminal in nature ” (Matter of Gregory W., supra, p. 62; see, also, Matter of Gault, 387 U. S. 1; Matter of Whittington, 391 U. S. 341) reasons that “consequently, the respondent in such a proceeding must be fully protected against involuntary self incrimination. If a statement or confession is to be used against him, there must be full compliance with due process requirements ’ \ The reported Family Court decisions which have dealt with the constitutional rights of juveniles are uniform in their determination to accord the. juvenile the same constitutional rights as adults.[2]
Moreover, any disregard of the juvenile’s constitutional rights or lapse from the same constitutional standards applicable to adults brings a sharp rebuke from higher judicial authority. For instance, in Tolliver v. Judges of Family Ct. (59 Misc 2d 104, 105) the Family Court Judge had declared a mistrial and set the case down for a new hearing ‘ ‘ because of failure of necessary witness to respond to subpoena and because of Judge’s perusal of other .records of respondent.” In a proceeding pursuant to article 78 of the CPLR for relief in the nature of prohibition the Supreme Court stayed the Family Court from conducting any further proceedings against the respondent for the reason that the first proceeding had placed the boy in jeopardy. The court wrote (p. 105): “ The unsuccessful hear-in (tantamount to a trial) is a bar to subsequent prosecution for *161 the same acts. The constitutional safeguards against successive trials for the same offense form a cornerstone of our jurisprudence and may be invoked by the young who face institutionalization as well as by adults subject to incarceration (Matter of Gault, 387 U. S. 1; Matter of Aaron D., 30 A D 2d 183) ”.
More directly in point, since it concerns the applicability of the Code of Criminal Procedure to the Family Court, is the case of Matter of Steven B. (30 A D 2d 442). Although the right involved was not of constitutional origin, the holding that a juvenile charged with third degree assault and attempted robbery was entitled to the benefit of section 392 of the Code of Criminal Procedure which proscribes the conviction of anyone on the unsworn testimony of a child unsupported by other evidence is consistent with a concept of juvenile delinquency proceedings as “quasi-criminal in nature ”. The court said (p. 444): “It is apparent that this appellant must be given the benefit of section 392 of the Code of Criminal Procedure, because to hold otherwise would deny to him his right of equal protection of the laws. (Matter of Gault, supra.) The requirements of due process and fair treatment demand that the provisions of section 392 be extended to children charged with the doing of an act which, if done by an adult, would be a crime. We do not perceive any valid ground for denying appellant the benefit of that section simply because he is a child (Matter of William L., 29 A D 2d 182, 185.) ”
It seems equally apparent that this respondent must be given the benefit of section 399 of the Code of Criminal Procedure. Since there was no other evidence presented by the petitioner as tends to connect the respondent with the commission of the crime to corroborate the testimony of his accomplice the petition must be dismissed. (Family Ct. Act, § 751.)
In reaching this conclusion I have not overlooked the recent decision of the Court of Appeals in Matter of Samuel W. (24 N Y 2d 196 [March, 1969]) holding constitutional section 744 (subd. [b]) of the Family Court Act which provides that any determination at the conclusion of a fact-finding hearing that a child did an act ‘‘ must be based on a preponderance of the evidence ”. The court in an opinion by Bebgah, J. reviews the concept and philosophy of the juvenile court from People v. Lewis (260 N. Y. 171 [1932]) through Matter of Gault (387 U. S. 1 [1967]) and because, in spite of Gault, Kent v. United States (383 U. S. 541) and Matter of Gregory W. (19 N Y 2d 55) which it characterizes as ‘ ‘ hard cases ’ ’, it concluded that the proceedings are noncriminal, it found no necessity to apply the standard of “ reasonable doubt ” required for conviction by *162 section 389 of the Code of Criminal Procedure to juvenile delinquency proceedings.
This conclusion is predicated upon the premise that ‘ ‘ the delinquency status is not made a crime; and the proceedings are not criminal. There is, hence,” says the opinion, “ no deprivation of due process in the statutory provision; and, since the proceeding is quite different from a criminal prosecution, it seems reasonable to think there is no substantial equal protection question in the case. ’ ’
“ The decision in Gault, in which there was almost a total absence of due process, is not necessarily to be read as an interdiction of this standard of proof required by the New York statute. It is not an absence of procedural due process that á noncriminal .status determination have a different measure of proof than that required for conviction of crime.” (Matter of Samuel W., supra, p. 203.)
This language certainly represents a retreat from the language of the same court in Matter of Gregory W. (supra) in which juvenile delinquency proceedings were said to be “at the very least quasi-criminal in nature ” and is the product of a rationale which, as Chief Judge Fuld points out (p. 204) in his dissent, was “ decisively rejected by the court’s approach to the problem in Gault.”
So long as the law and the courts continue to vacillate in their conception and philosophy of juvenile court processes and are unwilling or unable to make a clear cut choice between the civil or criminal nature of the proceedings, juvenile court proceedings, at least in the fact-finding stages, will continue to remain a grey area in the law with all the attendant uncertainties as to what extent, if any, other constitutional guarantees beyond those required by Gault[3] or what standards of proof and procedures required by the criminal law must be applied in the juvenile court. Labeling the proceedings ‘1 quasi-criminal in nature ” is of no help; it only serves to confound and confuse the issue further.
*163 Although Matter of Samuel W. (supra) holds the standard of proof beyond a reasonable doubt required by section 389 of the Code of Criminal Procedure is not applicable to juvenile court proceedings because of the existence of a constitutionally valid provision prescribing a lesser standard of proof (Family Ct. Act, § 744, subd. [b]), it does not require the sweeping conclusion that all other provisions of the Code of Criminal Procedure are likewise rendered inapplicable.[4] Since Samuel W. does not reach the precise question here presented, I believe that, in the light of Gault, a holding that this respondent is entitled to the benefit of section 399 of the Code of Criminal Procedure is consonant with the expanding conceptions of due process and the equal protection of the laws to which juveniles as well as adults are now entitled.[5]
The petition is, therefore, dismissed.

. Other Family Court cases not involving standards of proof but also holding the Code of Criminal Procedure inapplicable to Family Court proceedings are Matter of Bogart (45 Misc 2d 1075 [Code Crim. Pro., § 145]); Matter of Turner (56 Misc 2d 454 [Code Crim. Pro., § 279]); cf. Matter of Houseworth (53 Misc 2d 375).

. See, e.g., Matter of Ronny (40 Misc 2d 194); Matter of Williams (49 Misc 2d 154); Matter of Doe (52 Misc 2d 22); Matter of Rust (53 Misc 2d 51); Matter of Knox (53 Misc 2d 889); Matter of De Gaglia (54 Misc 2d 423); Matter of Turner (56 Misc 2d 638); Matter of Nelson (58 Misc 2d 748).

. For instance, what about security against unreasonable searches and seizures (4th Arndt.); the right to be prosecuted for an infamous crime only on a presentment or indictment of a Grand Jury (5th Arndt.); double jeopardy (5th Arndt.); speedy and public trial by jury (6th Arndt.); bail (8th Arndt.); equal protection of the laws (14th Arndt.) ?
Why exclude indictment by Grand Jury and freedom from double jeopardy both guaranteed by the Fifth Amendment when other rights also guaranteed by the Fifth Amendment, i.e. freedom from self incrimination and due process have been extended to juveniles by Gault as well as the right to counsel guaranteed by the Sixth?

. Sections 721 and 722 of the Family Court Act expressly makes applicable sections 177 and 183 of the Code of Criminal Procedure, respectively.

. See dissenting opinion of Chief Judge Fuld in which Judges Burke and Keating concur in Matter of Samuel W. (24 N Y 2d 196) and the cases of Matter of Urbasck (38 Ill. 2d 535) and United States v. Costanzo (395 F. 2d 441); also Dorsen & Reznech, Gault and Juvenile Laws, 1 ABA Family L. Q., No. 4 (Dec. 1967) pp. 1, 25-27 cited therein.