THE PEOPLE OF THE STATE OF NEW YORK ex rel. ARTHUR F. (ANONYMOUS), Appellant, *v.* BENJAMIN J. HILL, as Superintendent of Otisville Training School, Respondent.

Second Department, February 22, 1971.

*Charles Schinitsky* (*Michael Gage* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General* (*John G. Proudfit* of counsel), for respondent.

SHAPIRO, J. The relator appeals from a judgment of the Supreme Court, Orange County, dismissing his application in this habeas corpus proceeding, in which he sought the release of his son, Ronald, from the custody of the Otisville Training School for Boys.

After a prior fact finding and dispositional hearing the Family Court, Kings County, on May 5, 1967 had adjudged Ronald to be a juvenile delinquent and had placed him in the custody of the New York State training school at Highland for a period of 18 months terminating on November 4, 1968. On April 11, 1968 he was paroled. On October 24, 1968, and without any hearing, Ronald's placement in the training school was extended for 12 months as of November 4, 1968 "without prejudice to the right of parents." Neither Ronald nor his father received any notice of the proceedings. Of course, not knowing about the proceedings, they were not present in court. On July 2, 1969, and while on parole, Ronald appeared in court and his return to the training school was requested. At that time his father and a Law Guardian were present. On July 15, 1969 he was remanded to the juvenile center for transportation to the State training school and three days later he was returned to the Warwick School for Boys as a parole violator.

On October 10, 1969 the Warwick School requested a one-year extension of Ronald's placement. On October 31, 1969 placement was extended for one year as of November 4, 1969. While the minutes of the " hearing " before the Family Court Judge indicate that a probation officer and a Legal Aid Society attorney were present, neither Ronald nor his father was in court; nor did they receive notice of the proceedings. The entire record made at that time consisted of the following:

" COURT OFFICER: Number 12 on the calendar, Ronald * * * No appearance. This is on for an extension of placement.

THE COURT: Ronald * * * was placed by the Court on May 6, 1967. Committed to Highland School on May 9, 1967. Paroled April 11, 1968. Returned to Warwick July 18, 1969. He's now back at Warwick. They're requesting further institutionalization. Placement extended for one year, for one year as of November 4, 1969. Notify all parties."

On March 26, 1970 Ronald was paroled from the Warwick School. While on parole he allegedly engaged in an attempted burglary, as a result of which a new juvenile delinquency petition was filed against him. He appeared in court with his father and Legal Aid Society counsel in connection with that petition. The probation officer recommended that Ronald be remanded to the New York State Training School. His parole was thereupon revoked and he was remanded to the juvenile center for the purpose of being returned to the jurisdiction of the State training school. On July 29, 1970 this new petition

was dismissed when the court was advised that the complainant had dropped the charges.

Upon an order to show cause dated August 31, 1970 Ronald's father petitioned the Supreme Court, Orange County, for an order releasing Ronald from the custody of the Otisville Training School for Boys, where he was then confined. It is from the denial of that application that this appeal was taken.

The statute here involved is section 756 of the Family Court Act, which reads:

" (a) For purposes of sections seven hundred fifty-three and seven hundred fifty-four, the court may place the child in its own home or in the custody of a suitable relative or other suitable private person or a commissioner of social services or an authorized agency including the state training schools established under article seven of the social services law, or a youth opportunity center as provided in section five hundred two of the executive law, subject to the orders of the court.

" (b) Placements under this section may be for an initial period of eighteen months and the court in its discretion may, at the expiration of such period, make successive extensions for additional periods of one year each. The place in which or the person with which the child has been placed under this section shall submit a report at the end of the year of placement, making recommendations and giving such supporting data as is appropriate. The court on its own motion may at the conclusion of any period of placement hold a hearing concerning the need for continuing the placement.

" (c) Successive extensions may be granted, but no placement may be made or continued under this section beyond the child's eighteenth birthday if male, or twentieth birthday if female, without his or her consent and in no event past his or her twenty-first birthday."

In *People ex rel. Schinitsky (Kenneth D.)* v. *Cohen* (34 A D 2d 1020, 1021) this court, in discussing this very statute, said: " Juvenile court proceedings ' resulting as they do in a loss of personal freedom, are at the very least quasi-criminal in nature ' (*Matter of Gregory W.*, 19 N Y 2d 55, 62; see, also, *Matter of Aaron D.*, 30 A D 2d 183, 184; *Matter of Gault*, 387 U. S. 1). To this extent section 756 of the Family Court Act is quasi-criminal in nature, at least so far as due process is concerned. Penal laws are to be strictly construed (*People* v. *Shakun*, 251 N. Y. 107, 113)."

In *People ex rel. Menechino* v. *Warden* (27 N Y 2d 376), the court dealt with subdivision 7 of section 212 of the Correction Law, which expressly provides that in a parole revoca-

tion hearing the parolee may appear before the Parole Board " personally, but not through counsel or others ". Despite the " no-counsel " provision of that statute the court held that demands of due process, both under the Federal and New York State Constitutions, required that a parolee be represented by counsel and that he be permitted to introduce testimony on his behalf at such a hearing.

By a parity of reasoning, when the Family Court on October 24, 1968 undertook to extend Ronald's placement in the train-school for 12 months from November 4, 1968, without a hearing and without notice to him or his father, it was not only denying him due process of law but was proceeding without having any jurisdiction over him.

To argue as does the Attorney-General, that there is no analogy between placement of a child in the State training school and a criminal conviction, is beside the point, for as the court said in *Matter of Gault* (387 U. S. 1, 27): "It is of no constitutional consequence — and of limited practical meaning — that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a ' receiving home ' or an ' industrial school ' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time."

While it is true that in that same case the court said " nor do we here rule upon the question whether *ordinary due process requirements* must be observed with respect to hearings to determine the disposition of the delinquent child " (p. 27; emphasis supplied), it nevertheless pointed out (p. 36) that " the child ' requires the guiding hand of counsel at every step in the proceedings against him ' ", citing *Powell* v. *Alabama* (287 U. S. 45, 69).

Though the critical question before the Family Court in a case like ours is to decide what is in the best interests of the child, such a determination must be made by a court which has jurisdiction over the child and in a proceeding, *after notice to him,* in which he is entitled through counsel to inquire into the reasons for the requested extension of placement and by his own testimony and otherwise to refute them, if possible. Such a proceeding clearly requires a hearing. Hence, when the court, without a hearing, on October 24, 1968, extended Ronald's period under supervision and possible confinement for an additional 12 months from November 4, 1968, he was deprived of due process of law.

We thus need go no further in our analysis of the facts in this record. Ronald's original placement (sentence) was to

terminate on November 4, 1968. There never was any valid extension of that term. As a consequence, when the court without notice to him on October 24, 1968 extended his term of placement for 12 months from November 4, 1968, that extension was without any legal significance. It follows that Ronald was entitled to be released on November 4, 1968 and that every proceeding affecting his rights thereafter taken, all of which purported to be extensions of the original October 24, 1968 placement extension, was and is void. Accordingly, the judgment appealed from should be reversed, on the law and the facts, without costs, the petition granted and Ronald ordered discharged from custody forthwith.

MUNDER, Acting P. J., MARTUSCELLO, CHRIST and BENJAMIN, JJ., concur.

Judgment reversed, on the law and the facts, without costs, petition granted and relator's son ordered discharged from custody forthwith.