OPINION OF THE COURT
Richard D. Huttner, J.
Barry M. is a respondent in a juvenile delinquency proceeding wherein he is charged with murder in the second degree. His brother, age 16, was called upon to testify by the Assistant District Attorney at the fact-finding proceeding. During an investigation, the police obtained statements purporting to show that the witness was apparently an accomplice to the respondent. To date, no charges were brought against this witness. During the probable cause hearing, the witness’ testimony was detrimental to respondent’s case.
At the fact-finding hearing the witness invoked his Fifth Amendment privilege. It was apparent that the witness’ testimony was crucial to petitioner’s case. Accordingly, the Assistant District Attorney asked the court to grant immunity under CPL 50.30.
Is the Family Court empowered to grant immunity in accordance with CPL 50.30? I believe the answer to be in the affirmative. CPL 50.30 states: "In any criminal proceeding, other than a grand jury proceeding, the court is a competent authority to confer immunity in accordance with the provisions of section 50.20, but only when expressly requested by the district attorney to do so.” (Emphasis added.)
*884 Whether a juvenile delinquency proceeding is a "criminal” or "civil” requires a brief digression into the history of the juvenile justice system.
Indisputably, treatment of the juvenile offender has never been made synonomous with adult criminal treatment. Our enlightened society cannot and should not make such an equation in the face of what everyday experience and our behavioral sciences teaches us. There are reasons youths rebel, both psychological and socio-economical. Historically, modern jurisprudence has always been sanguine in its hope that rehabilitation can ameliorate an errant youth into a productive member of society. It is this optimistic philosophy that pervades the Family Court Act.
But there is an emotional side to society also. The victim suffers no less from the youthful hand then from the hands of a hardened criminal. He cries for vengeance, for vindication, for protection. Herein lies the enigma. How is an equilibrium achieved between rehabilitation and understanding of the juvenile delinquent on the one hand, and society’s need for protection and punishment of wrongdoers on the other?
It is this very effort to attain this delicate balance that constitutes a vast portion of the history of our juvenile justice system. An excellent example of society’s reluctance to equate juvenile crime with adult crime is the Legislature’s innovative approach with respect to the nomenclature used in section 711 of the Family Court Act. "Petitioner” instead of complainant, "petition” instead of accusatory instrument and "respondent” instead of defendant. (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 711, p 549.)
But the differentiation between our views of juvenile and nonjuvenile crime was seen to be too broad a chasm. The constitutional rights of juveniles were disregarded under the benificent philosophy that a juvenile delinquency proceeding wherein the commission of criminal acts were being litigated was "civil” in nature. What was intended for the benefit of the juvenile offender that is, denominating the proceeding as "civil” inured to the detriment of the accused. He was being denied elemental constitutional rights. The lofty purpose of our juvenile justice system was backfiring into the very faces of the children sought to be protected.
The first erosion of the concept that the juvenile proceeding *885 was "civil” came about in an effort to protect the juvenile and afford him the same constitutional guarantees and standards of fairness and due process as are afforded adult criminal defendants. (Matter of Gault, 387 US 1.) The court’s action recognized the respondent in a juvenile delinquency proceeding indeed found himself in a "criminal” proceeding. Observing this, the United States Supreme Court held the juvenile entitled to the same quantum of proof to sustain conviction in a juvenile delinquency proceeding as the quantum needed in an adult criminal proceeding, "beyond a reasonable doubt” rather than by a "preponderance of the evidence”. Accordingly, section 744 of the Family Court Act was amended. (Matter of Winship, 397 US 358.)
Despite the Legislature’s magnanimous ideal that the juvenile delinquency proceeding was an informal, protective, civil-type proceeding, the concept simply was unworkable. As annunciated in Gault (supra, p 49): "In the first place, juvenile proceedings to determine 'delinquency,’ which may lead to commitment to a state institution, must be regarded as 'criminal’ for purpose of the privilege against self-incrimination.” Clearly, whenever the issue of self incrimination is raised at a delinquency hearing the nature of that proceeding (as in the instant case) must be deemed "criminal” in character.
The delinquency proceeding was a hybrid, somewhat criminal yet somewhat civil. A vague formula was announced by the United States Supreme Court. The criminal procedure statutes should be used when "appropriate”. (McKeiver v Pennsylvania, 403 US 528; Matter of Winship, supra.) The criminal adjective law is to be employed only when the essentials of due process and fair treatment are assured. (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 711, p 551.)
The passage of the Juvenile Justice Reform Act of 1976 (L 1976, ch 878) clearly states in unequivocal terms a newly expressed societal interest — "protection of the community” even at the expense of the youth’s incarceration in jail. Society had its fill. Its protection had to be assured, it could no longer tolerate the antisocial acts of the juvenile offender. It is beyond peradventure, the "civil” nature of the delinquency proceeding was in extremis. An inroad has been forged, clearly pointing to the theory of "let the punishment fit the crime” — "an eye for an eye,” etc. There can be no doubt when a juvenile faces the prospect of incarceration outside the *886 community in a jail-like setting, the proceeding wherein this possibility becomes a reality is "criminal”.
In the landmark case of Matter of Gregory W., (19 NY2d 55, 62), the court clearly held that in view of the possible loss of personal freedom delinquency proceedings "are at the very least quasi-criminal in nature.”
It is now settled law that juvenile delinquency proceedings are quasi-criminal as evidenced by a plethora of opinions, some of which are: Matter of Pinkard (28 AD2d 34, 36), People ex rel. Schinitsky v Cohen (34 AD2d 1020, 1021), People ex rel. Arthur F. v Hill (36 AD2d 42), Matter of Aaron D. (30 AD2d 183), Matter of Fonseca v Judges, Family Court (59 Misc 2d 492), Matter of Walsh (59 Misc 2d 917), Matter of Edwin R. (60 Misc 2d 355), Matter of Rust (53 Misc 2d 51), Matter of Knox (53 Misc 2d 889) and Matter of Dell (56 Misc 2d 1017).
The frustration of our failure to ameliorate juvenile crime was eloquently stated in the opinion of Judge Elwyn in Matter of Lang (60 Misc 2d 155, 158-159): "juvenile courts have been pointedly reminded of their failure to achieve the exalted ideals envisaged by their planners * * * Whatever circumvention of constitutional rights and due process could be rationalized from the 'civil’ label applied to juvenile delinquency proceedings has been completely swept away by Supreme Court’s decision in Gault. * * * The concept of these proceedings as 'civil’ * * * is dead.”
But the cases have not gone so far as to permit the blanket use of the CPL in juvenile delinquency proceedings. Our Court of Appeals held in Matter of D. (Daniel) (27 NY2d 90, 95), that the applicability of the CPL to juvenile delinquency proceeding must be decided on a case-by-case basis.
In Matter of Winship (397 US 358, 359, 366, supra), it was held that the juvenile is entitled to the same protection given adults on criminal proceedings unless such constitutional protection would risk destruction to the beneficent aspects of the juvenile process.
In view of the foregoing holdings, this proceeding to determine whether a juvenile committed murder is perforce a quasi-criminal proceeding. As such, CPL 50.30 is appropriate and should be utilized. The issue, however, remains despite having a "criminal proceeding” before it, is the Family Court, being of limited jurisdiction, empowered to grant immunity? Of necessity the answer is yes.
*887 The Family Court has exclusive original jurisdiction over juvenile delinquency proceedings. (Family Ct Act, § 713.) It is solely and exclusively within the province of this court that the interests of salvaging our youths from a career of crime as well as protecting our community from their acts are reposed (Family Ct Act, § 711).
The pain, suffering and grief sustained by the victims and family of juvenile crime is not mitigated because the perpetrator is of tender years. Nor is it mitigated because his sense of reason and morality has not yet matured. Section 711 of the Family Court Act recognizes by its explicit mandate that society which is victimized by the errant juvenile is entitled to no less consideration and protection than the juvenile himself.
The protection must, however, be afforded without abdicating the principal purpose of the juvenile court, to rehabilitate. A harmony must be fashioned by the court to protect the community while being vigilant in assuring that the juvenile offenders constitutional rights be safeguarded.
A balance must be struck but in the context of the realization that the needs of the juvenile are no more paramount than the needs of the community’s right to protection from his acts.
It is the fundamental public policy of any State to ensure that criminals are brought to justice. Immunity statutes such as CPL 50.30 assure this result. "[Immunity statutes] aid prosecuting officers in apprehending criminals, or those engaged in criminal enterprises by inducing them or their confederates to turn state’s evidence and tell on each other”. (22 CJS, Criminal Law, p 160.)
I see no way in which the respondent’s constitutional rights are infringed upon or adversely diminished or affected by permitting a Family Court Judge to grant immunity to a witness. The mere fact that by implementing CPL 50.30 the chances of successful prosecutions are enhanced does not constitute a denegration of the accused juvenile’s constitutional rights.
It is noteworthy also to take cognizance of the fact that the juvenile delinquency hearing is a bifurcated affair. It is comprised of the "fact-finding” part (Family Ct Act, § 742) and the "dispositional” aspect (Family Ct Act, § 743).
The informality of the dispositional hearing is apparent in that section 745 of the Family Court Act provides for only *888 "material and relevant” evidence and a finding may be made on the "preponderance of the evidence”. It is at this phase of the proceeding that special considerations tailored to the individual respondent’s needs can be made. Hearsay is admissible. Great discretion is left to the Trial Judge in sentencing (Family Ct Act, § 756) and even after sentencing, the Division for Youth can in many cases shorten the sentence or change the place of incarceration to one which is in its opinion more fitting to the youth. It is at the dispositional phase that the juvenile is treated as a "special” societal problem. It is at this phase that social worker’s reports, psychiatric reports, etc., are utilized. Therefore, by applying the CPL, within the perimeters of the respondent’s constitutional rights, to the fact-finding phase of the delinquency hearing, this court in no way abandons the rehabilitation purposes of the statute. The dispositional phase is tailored to be totally sensitive and responsive to the unique problems of the juvenile offender. For the criminal justice system to work effectively, matters of a criminal nature must be divulged, a conspiracy of silence is intolerable to society’s interest in crime detection and the apprehension of wrongdoers. Without the use of such a statute the Fifth Amendment right becomes a sword not the shield as intended by the draftsmen of our Constitution.
One learned Judge has analyzed the direction of our juvenile jurisprudence in the area of the applicability of the CPL to juvenile proceedings. She has observed, and I believe correctly "one CPL provision after another has been held applicable, as a matter of constitutional necessity, to a juvenile” (Matter of Tony W., 91 Misc 2d 700, 701).
This proceeding is one to determine if a juvenile committed murder. To describe such a proceeding as "civil” is a myopic charade. I find it is wholly consonant with both case law and statutory mandates that the Family Court grant immunity in a juvenile delinquency proceeding in accordance with CPL 50.30. Absent its use, the effectiveness of the criminal justice system will be frustrated. With its use, the fact-finding capacity and purpose of this court will be enhanced without any attendant erosion or havoc to the due process rights of the juvenile respondent.
The Family Court in its day-to-day operations in the criminal justice system requires the aid of CPL 50.30 no less than any other criminal court of this State.
The Assistant District Attorney attempted to examine the witness with respect to his prior testimony at a probable cause *889 hearing over the objection of defense counsel. The second issue is: Do CPL 670.10 and 670.20 apply to a juvenile delinquency hearing? If so, is a witness’ invocation of his Fifth Amendment rights tantamount to "incapacity” under the terms of the afore-stated statutes?
 These sections, too, apply to juvenile delinquency fact-finding hearings. The same reasoning making CPL 50.30 applicable pertain here. The juvenile delinquency fact-finding proceeding is quasi-criminal. Neither the constitutional rights of the respondent nor the witness is abridged through the employment of these sections. It is wholly appropriate to utilize these sections in such a proceeding. The CPLR is wholly inappropriate (Family Ct Act, § 164). When a witness refuses to testify asserting his Fifth Amendment rights, it is tantamount to inability to attend because of incapacity. As stated in People v Chavers (82 Misc 2d 201, 204) the test of "an inability to 'attend’ because of an 'incapacity’ * * * 'is whether the testimony of the witness is sought and available and not whether the witness’ body is available.’ ”
A third issue presented is: In his brief, respondent’s attorney requests that the witness’ testimony be precluded, because a prior statement of a detective and a police department form "complaint follow up” were not furnished to him pursuant to Brady v Maryland (373 US 83), Barbee v Warden, Maryland Penitentiary (331 F2d 842), Giles v Maryland (386 US 66) and United States v Rosner (516 F2d 269).
An examination of the detective’s report inculpates respondent directly to the murder. Likewise, the police "complaint follow up” form which recited an interview with the witness inculpates respondent. The holding of Brady v Maryland (supra) and its progeny are clear. Counsel for the defense is entitled to exculpatory materials only. Accordingly, respondent’s attorney was not entitled to the above reports. In addition, respondent’s attorney points out that because the court was unaware of the contents of the above documents at the probable cause hearing, it did not know that the witness, age 16, was considered a possible perpetrator. Therefore, it did not appoint counsel or admonish or advise the witness of his possible jeopardy. Assuming, arguendo, that it is necessary for a Trial Judge to so warn a 16-year-old witness denial of this right is personal to the witness and the respondent, therefore, cannot claim prejudice by its denial to someone else.