OPINION OF THE COURT
George L. Jurow, J.
May a Family Court Judge grant immunity from prosecution to a juvenile witness in a delinquency proceeding when requested to do so by the Corporation Counsel? This question raises important issues concerning the applicability of the Criminal Procedure Law immunity provisions to Family Court proceedings, as well as related constitutional and policy considerations affecting the Family Court’s powers in relation to immunity grants. For the reasons detailed below, this court holds that the Family Court lacks the power to grant a Corporation Counsel request to immunize its own witness in a delinquency proceeding.[2]
*381 At the time of the hearing on this matter, article 7 of the Family Court Act was in effect. On July 1, 1983, article 7 was amended and a new article 3 entitled “Juvenile Delinquency” took effect (L 1982, ch 920, as amd).
For purposes of this decision, the court utilizes the provisions of article 7, applicable to the hearing on this matter, but also takes into account the provisions of article 3 as they relate to the issues raised by this case.
The instant petition alleged that respondent Noel N. committed acts, which if done by an adult, would constitute the various crimes of assault in the second and third degrees, reckless endangerment in the first and second degrees, and criminal possession of a weapon in the fourth degree. After a lengthy fact-finding hearing, the court dismissed the petition in its entirety for failure to prove the allegations beyond a reasonable doubt.
In the course of the hearing, a witness for the respondent, aged 14, testified in regard to the incident alleged in the petition. During the Corporation Counsel’s cross-examination of this witness, it became apparent to the court that the witness might, by continuing to respond to the line of questioning, provide information which could form the basis of a juvenile delinquency petition against him. Under these circumstances, the court intervened and appointed counsel for the witness in order to assure that the witness’ privilege against self incrimination would be adequately, protected. After conferring with counsel, the witness invoked his privilege against self incrimination and declined to respond to certain further questions by Corporation Counsel. Corporation Counsel thereupon requested that the court, pursuant to CPL 50.30, confer immunity upon the witness. The Corporation Counsel’s application was opposed by both respondent’s Law Guardian and by counsel appointed for the witness. The court heard oral argument on the question by opposing counsel.
In her argument, Corporation Counsel relies heavily upon the case of Matter of Barry M. (93 Misc 2d 882) in which the Family Court, Queens County, held that CPL 50.30 is applicable to Family Court proceedings, and that the court is empowered to grant immunity, at least upon *382 application by the District Attorney. Opposing counsel argue that Matter of Barry M. is inapposite to the instant proceeding and that, in any event, the Family Court lacks the necessary specific authority to grant the immunity requested by Corporation Counsel.
CPL 50.30 provides: “In any criminal proceeding, other than a grand jury proceeding, the court is a competent authority to confer immunity in accordance with the provisions of section 50.20, but only when expressly requested by the district attorney to do so.” (Emphasis added.) Whether the Family Court may confer immunity pursuant to CPL 50.30, or alternatively, whether the Family Court may confer immunity in the absence of express statutory authority, requires a brief review of the nature of immunity doctrines as they have evolved at both the State and Federal level.
The basic purpose of immunity statutes is to allow the government to compel witness’ testimony in the face of the constitutional privilege against self incrimination (both the Fifth Amendment of the Federal Constitution and section 6 of article I of the New York State Constitution set forth the constitutional privilege). In this sense immunity statutes represent an attempt to balance the legitimate need of the government to compel testimony in furtherance of its prosecutorial authority versus the right of witnesses to claim their self incrimination privilege. There are two general types of immunity statutes: so-called “transactional” immunity which precludes future prosecution of a witness for any crimes referred to in the witness’ testimony, and so-called “use and derivative use” immunity which, more narrowly, only precludes the prosecution from later using the witness’ specific testimony or information so derived from such testimony.
The current Federal immunity statute (US Code, tit 18, § 6002), which provides that the court may confer immunity upon application of the United States Attorney, is of the “use and derivative use” type. In Kastigar v United States (406 US 441) the Supreme Court held that such “use and derivative use” immunity statutes are constitutional in. that they provide immunity protection that is suffi *383 ciently coextensive with the constitutional privilege. The type of immunity conferred under the CPL is of the broader transactional type (CPL 50.10). It is also important to note that the Federal immunity statute is similar in structure to its New York State CPL counterpart in that the court is authorized under both statutes to grant immunity, but only upon application of the prosecutor (in the former, the United States Attorney, and in the latter, the District Attorney).
The Family Court is a court of strictly limited jurisdiction, and the court may not act beyond the scope of powers specifically given it. (Matter of Borkowski, 38 AD2d 752.) Within the framework of the Family Court Act there presently exists only one specific provision concerning immunity grants. That provision appears in article 10 of the Family Court Act, which governs child abuse and neglect proceedings. Subdivision (d) of section 1014 of article 10 authorizes the Family Court to grant the respondent testimonial immunity in any subsequent criminal court proceeding. (See Matter of Vance A., 105 Misc 2d 254.) There is no provision concerning immunity in any of the other sections of the Family Court Act, including article 7 which governs delinquency proceedings. Corporation Counsel argues in the present case that, notwithstanding the silence of article 7 concerning immunity, numerous provisions of the CPL have been held applicable to Family Court proceedings. Moreover, argues Corporation Counsel, Matter of Barry M. (supra) specifically held CPL 50.30 applicable to a Family Court delinquency proceeding.
It is of course true that juvenile delinquency proceedings have been long recognized as at least quasi-criminal in nature, and that juveniles are entitled to similar constitutional protections afforded adults in criminal proceedings. (Matter of Gault, 387 US 1; Matter of Winship, 397 US 358.) However, not every right applicable in an adult criminal proceeding is applicable to a juvenile. The question is whether the constitutional or statutory right in question relates to “fundamental fairness” and to the protection of the juvenile. Therefore, there is no blanket application of the CPL, and each application must be decided on a case- *384 by-case basis. (McKeiver v Pennsylvania, 403 US 528; Matter of Daniel D., 27 NY2d 90; Matter of Tony W., 91 Misc 2d 700.) It is within the context of Matter of Gault and its progeny that three New York cases have held the CPL immunity provisions applicable to juvenile or persons in need of supervision (PINS) (article 7) proceedings. Two of these cases, Matter of De Gaglia (54 Misc 2d 423) and Matter of Jaime T. (96 Misc 2d 173), involved juveniles who, prior to the Family Court proceeding, had testified previously before a Grand Jury and were therefore automatically granted immunity pursuant to CPL 190.40. Both cases held that since a similarly situated adult subsequent to the Grand Jury proceeding, would be barred from sentencing, a juvenile should be afforded the same right to be free from a subsequent Family Court dispositional order. Both these cases, which involved a juvenile’s appearance before a Grand Jury with attendant automatic conferral of immunity, are readily distinguishable from the instant case where the question presented is whether a juvenile witness, who is neither a respondent nor had previously appeared before a Grand Jury, is entitled to immunity. The third case holding the CPL immunity provisions applicable, Barry M. (93 Misc 2d 882, supra), is far more similar to the instant proceeding in that the immunity request to the court by the petitioner concerned the petitioner’s witness who had not been involved in a prior Grand Jury proceeding. The court’s decision in Barry M., holding CPL 50.30 applicable requires further scrutiny.
It should be noted that the petitioner in Barry M. (supra) was the District Attorney, rather than the Corporation Counsel as in the instant case, since the former matter involved a designated felony. (See Family Ct Act, § 254-a.) However, the application of CPL 50.30 to Family Court proceedings should not turn on this narrow distinction between petitioners, or on the type of allegation in the petition, but rather rests on the more fundamental considerations outlined in this opinion.
The court in Barry M., after first noting the quasi-criminal nature of juvenile delinquency proceedings and the case-by-case applicability of the CPL, saw the issue in question as the balancing of the community’s right to *385 protection from criminal acts and a juvenile’s right to constitutional protection. In striking this balance the court concluded that CPL 50.30 is applicable because the grant of immunity to a juvenile witness does not adversely affect the respondent’s constitutional rights, while permitting the prosecution the use of an immunity statute that it logically ought to be able to use whether the case involves a criminal adult proceeding or a quasi-criminal juvenile proceeding. In the court’s own language:
“It is the fundamental public policy of any State to ensure that criminals are brought to justice. Immunity statutes such as CPL 50.30 assure this result * * *
“I see no way in which the respondent’s constitutional rights are infringed upon or adversely diminished or affected by permitting a Family Court Judge to grant immunity to a witness. The mere fact that by implementing CPL 50.30 the chances of successful prosecutions are enhanced does not constitute a denigration of the accused juvenile’s constitutional rights * * *
“Without the use of such a [immunity] statute the Fifth Amendment right becomes a sword not the shield as intended by the draftsmen of our Constitution * * *
“Absent its use, the effectiveness of the criminal justice system will be frustrated. With its use, the fact-finding capacity and purpose of this court will be enhanced without any attendant erosion or havoc to the due process rights of the juvenile respondent * * *
“The Family Court in its day-to-day operations in the criminal justice system requires the aid of CPL 50.30 no less than any other criminal court of this State.” (Matter of Barry M., 93 Misc 2d 882, 887-888, supra; emphasis added.)
It is this court’s respectful opinion that the reasoning in Barry M. (supra) is questionable. While the premise that juvenile delinquency proceedings are quasi-criminal in nature is correct, it does not follow that the Family Court can base the applicability of a CPL provision, in part, on the fact that respondent’s rights are not otherwise denied. In fact, cases construing key CPL provisions as applicable to Family Court proceedings have, following Matter of *386 Gault (supra), been based on the premise that these provisions are applicable because they protect or enhance the rights of juveniles. (Matter of Eric R., 34 AD2d 402; Matter of Steven B., 30 AD2d 442; Matter of Tony W., 91 Misc 2d 700.) The effect of holding CPL 50.30 applicable to a petitioner’s witness in a juvenile proceeding is to enhance the prosecution’s interests, not to protect the rights of a juvenile. In this sense Barry M. stands Matter of Gault on its head by invoking the very line of cases designed to protect the constitutional rights of juveniles, in order to establish the essential criminality of delinquency proceedings, and then applying CPL 50.30 to further the prosecution’s rather than the juvenile’s interests.
Barry M. may also be read as advancing the premise that if the Family Court Act is otherwise silent, there is a presumptive application of any CPL provision to a delinquency proceeding because of its quasi-criminal character, provided the respondent’s constitutional rights are not affected. This premise appears to rest, in turn, on the observation that because numerous provisions of the CPL have been applied in the delinquency proceedings, there is a presumption that CPL 50.30 should be included as well, rather than singled out for exclusion. The problem with this contention concerns the types of CPL provisions that have been held applicable to delinquency proceedings. As already noted, one category concerns CPL provisions that have been held applicable in order to protect the respondent’s constitutional rights and are therefore readily distinguishable from CPL 50.30. Most of the remaining CPL provisions that have been applied to delinquency proceedings can be categorized as more procedural or administrative in nature, involving matters such as discovery, motion practice, and the like. Thus, notwithstanding the oft-cited general principle that “Family Court procedure is not governed by the Code of Criminal Procedure” (Matter of Daniel D., 27 NY2d 90, 95, supra), courts have looked to the CPL, when the CPL.R would be inappropriate, in prescribing a method of procedure with respect to delinquency proceedings. (See, e.g., Matter of Santos C., 66 Misc 2d 761; Matter of Archer, 89 Misc 2d 526; Matter of Edwin R., 60 Misc 2d 355.) However, to invoke this line of cases in *387 support of the applicability of CPL 50.30 obscures the unique character of the immunity provisions in contrast to many other CPL rules. Immunity has historically been a singularly prosecutorial weapon, derived specifically by statute. Its application to a particular case can significantly alter the balance of power between prosecution and defense. Immunity is thus different in character from discovery and related procedural rules which, although important as well, tend to involve the reciprocal ground rules that relate more to the orderly and fair administration of a trial.
Additional support for the argument that the CPL immunity provisions are different in character from many other procedural rules in the CPL is the fact that the New York State Legislature has enacted a comprehensive statute to govern delinquency proceedings, effective July 1, 1983. This statute, chapter 920 of the Laws of 1982 as amended by chapter 926 of the Laws of 1982, attempts to end the confusion as to whether or not a particular CPL provision should be applied to a Family Court delinquency proceeding. Subdivision 1 of section 303.1 of the Family Court Act provides that: “The provisions of the criminal procedure law shall not apply to proceedings under this article unless the applicability of such provisions are specifically prescribed by this act.” (Emphasis added.) There is no provision for immunity contained in the new statute, other than the limited provision in section 325.2 of the Family Court Act, prohibiting the introduction into evidence of a respondent’s testimony in a probable cause hearing, except for impeachment purposes.
Although in the instant case the Corporation Counsel requested the court to provide immunity pursuant to CPL 50.30, the question arises as to whether the court has the power on its own to confer immunity upon a prosecution witness. This question concerning whether the Family Court has any inherent power to confer immunity remains subsequent to the enactment of the new article 3 of the Family Court Act because, as noted above, article 3 does not incorporate CPL 50.30, and would therefore preclude immunity grants in Family Court delinquency proceedings *388 unless such grants can otherwise be based upon a theory-independent of an express grant of statutory authority.
. Barry M. {supra) alluded to the fact that the invocation of the privilege against self incrimination by a witness can frustrate the fact-finding capacity of a judicial proceeding. The question arises whether it is a properjudicial function for the court to intervene to create immunity either for the purpose of aiding the fact-finding process, or as noted also in Barry M., to better balance the interests between the prosecution and the defense in a criminal or quasi-criminal proceeding. In a sense, the reasoning in Barry M. was based as much, if not more, on the contention that the invocation of the privilege against self incrimination can skew a criminal proceeding in such a way that requires the court to confer immunity in order to better serve the interests of justice, than on the technical applicability of the CPL to juvenile proceedings.
The question of the judiciary’s role in conferring immunity, in the absence of specific legislative authority, has been raised most often on the Federal level in regard to the interpretation of the Federal immunity statute (US Code, tit 18, § 6002).
The general principle to be derived from the variety of cases interpreting the judiciary’s role with respect to the Federal immunity statute is that immunity can be granted only upon application of the United States Attorney. Therefore, the judiciary lacks the power to interfere in the statutory immunity process or to confer immunity itself. The court’s role is ministerial in nature and limited to assuring that the Government has complied with the requirements of section 6002 and may not extend to any interference with the Government’s prosecutorial discretion whether to request immunity. (See United States v Allstate Mtge. Corp., 507 F2d 492, cert den 421 US 999; United States v Lenz, 616 F2d 960, cert den 447 US 929; United States v Rocco, 587 F2d 144, cert den sub nom. La Duca v United States, 440 US 972; United States v Graham, 548 F2d 1302.)
Because the Kastigar decision (406 US 441, supra) in 1972 allows, at least in theory, future prosecution of wit *389 nesses notwithstanding previous “use and derivative use” grants of immunity, there have been increasing claims in recent years for so-called “defense witness” immunity. These claims, which argue that at least in certain circumstances, if not in general, that the defense ought to have as a great a right to immunize its own witnesses as does the prosecution its witnesses, invoke the court’s power to itself sanction an immunity grant. Such claims have, with rare exceptions, been rejected. (See United States v Turkish, 623 F2d 769, cert den 449 US 1077.) One exception was United States v Morrison (535 F2d 223) in which a defense witness invoked her privilege against self incrimination after repeated threats of prosecution. The court ordered the Government to provide immunity to the witness if it chose to retry the case. For a second exception see Government of Virgin Islands v Smith (615 F2d 964) in which the local prosecutor was agreeable to immunity for a juvenile defense witness, but was overruled by the United States Attorney.
The court in Smith (615 F2d 964, supra) indicated that immunity for the defense witness would be warranted if either the prosecution refusal to confer immunity was made “‘with the deliberate intention of distorting the judicial fact finding process’ ” (supra, p 966) or if the witness is capable of providing “clearly exculpatory evidence” and the Government can present no “strong countervailing * * * interest” (supra, p 970). Both of the above cases can be readily distinguished from the general principle limiting judicial intervention in the immunity area. Morrison can be viewed as consistent with the requirement that a court intervene on due process grounds to prevent prosecutorial misconduct; Smith was unusual in that the prosecutor opposing immunity did not have jurisdiction to prosecute the subject case. The reasoning in Smith was also criticized by the Second Circuit in Turkish (supra), which reviewed the various theories predicating claims of a defense witness immunity. Turkish noted that courts should be reluctant to engage in the types of inquiry suggested by Smith since it would require weighing the prosecution’s interests and intentions. The court also rejected two other related arguments for judicial intervention in the immunity process. Since these arguments were *390 also implicit in the court’s reasoning in Barry M. (93 Misc 2d 882, supra), they deserve brief mention.
First, it can be argued that the prosecution’s grant of immunity solely to its own witnesses gives it an advantage over the defense. This court would agree with Turkish that this argument, despite its superficial plausibility, rests on the erroneous premise that a trial ought to be a symmetrical proceeding. The better view is that the prosecution and defense have different roles and power, with attendant advantages and disadvantages, including law enforcement powers inherent in the prosecution, balanced by procedural advantages enjoyed by the defense.
Second, it can be argued that grants of immunity are necessary to enhance the fact-finding process. This argument views a trial as, above all, a search for the truth. The better view is that numerous countervailing interests are at stake in a trial, some of which may affect the “purity” of the fact-finding process. For example, the invocation of not only the privilege against self incrimination but also the numerous other traditional privileges may restrict the fact-finding trial process. In addition, grants of immunity have numerous consequences for the public interest in terms of balancing the effectiveness of current and future prosecutions. The balancing of these interests is better left to legislative definition or to prosecutorial discretion, than to judicial determination.
The few New York cases dealing with the question of defense witness immunity under the CPL, and therefore indirectly with the power of New York courts to confer immunity themselves, have followed the principles and reasoning of the counterpart Federal cases in concluding that the prosecutor has great discretion in determining whether or not to request immunity for a witness, with the court’s role limited to possible intervention only in the event of prosecutorial misconduct or other infringements of the defendant’s due process rights. (See People v Sapia, 41 NY2d 160; People v Shapiro, 50 NY2d 747.)
In summary, there is no justifiable basis for the court to grant the request by Corporation Counsel that immunity be conferred by the Family Court upon a witness in a *391 delinquency proceeding whom the prosecution is attempting to cross-examine. CPL 50.30 is not applicable to Family Court delinquency proceedings. Nor is any due process or other fundamental right of the respondent at issue that would create the rare set of special circumstances permitting judicial grants of immunity in the absence of specific statutory authority. (A grant of immunity by the court in this proceeding would inure to the benefit of the petitioner rather than the respondent.) Accordingly, the application by Corporation Counsel for the court to grant immunity to the subject witness must be denied.
It may appear anomalous that immunity provisions otherwise available to the prosecution in adult criminal cases are not available to the “presentment agency” (as the prosecution is now termed under amended article 3 of the Family Court Act) in a delinquency proceeding. However, because of the critical policy implications underlying the employment of immunity grants, and the effect such grants have on the balance of prosecutorial and defense interests, it is clearly a legislative rather than judicial function to determine the applicability of immunity provisions to different types of judicial proceedings. Prior to the enactment of the new article 3 of the Family Court Act it could be argued that the omission of a counterpart of CPL 50.30 from the former article 7 of the Family Court Act may not have reflected a lack of legislative intent that immunity be available to the prosecution in delinquency cases, because article 7 failed to address many aspects of criminal procedure. It is now clearer that the failure of the Legislature to incorporate immunity grants in the article 3 amendment to the Family Court Act leaves the “presentment agency” without this prosecutorial device unless the Legislature in the future chooses to alter this dichotomy between adult and juvenile proceedings.

. Although the subject witness was initially called by the respondent, the fact that the Corporation Counsel requested immunity in aid of its cross-examination of the witness, makes this witness, for the purposes of this analysis, the equivalent of a prosecution witness, and is referred to as such in this decision.